IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN NICHOLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-852-L |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The Plaintiff, Mr. John Nichols, applied for insurance benefits based on an alleged disability. *See* Administrative Record at pp. 88-90 (certified Sept. 14, 2011) ("Record"). The Social Security Administration rejected the application,[1] and Mr. Nichols initiated the present action. The Court should affirm.

I.   STANDARD OF REVIEW

The Court must determine whether the Social Security Administration's decision is based on substantial evidence and the correct legal standard. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Evidence is substantial if it is greater than a scintilla. *See Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). If the Social Security Administration's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary. *See Byron v. Heckler*, 742 F.2d 1232,

---

[1]   Record at pp. 1-3, 11-23, 46-47, 50-54, 56-58.

1235 (10th Cir. 1984). However, a court may not reweigh the evidence or substitute its judgment for that of the Social Security Administration. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992).

II. INQUIRY INTO POTENTIAL CONFLICTS BETWEEN THE VOCATIONAL TESTIMONY AND THE DICTIONARY OF OCCUPATIONAL TITLES

According to the Plaintiff, the administrative law judge failed to inquire into potential conflicts between the vocational testimony and the Dictionary of Occupational Titles ("DOT"). The Court need not decide whether an inquiry was needed because any alleged error would have been harmless.

In *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999), the Tenth Circuit Court of Appeals held that "the [administrative law judge] must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the [administrative law judge] may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d at 1091.

The vocational expert testified that the Plaintiff could perform three jobs with the physical limitations ultimately assessed by the administrative law judge: stuffer,[2] surveillance system monitor, and promotional button assembler. Record at p. 43. The expert was not asked about potential conflicts between his testimony and the DOT. *See id.* But with regard to the number of surveillance system monitor jobs, the expert volunteered that

---

[2] The vocational expert said that this position would involve hand-stuffing of items like teddy bears and dolls. Record at p. 43.

his testimony would "deviate" from the DOT because he was including public- and private-sector jobs. *Id.*

The Plaintiff contends that the administrative law judge had failed to inquire into potential conflicts with the DOT. The Defendant responds that the judge did not need to inquire because the expert had volunteered that the sole inconsistency would have related to the job as a surveillance system monitor. The Defendant's characterization of the testimony is inaccurate.

The expert did volunteer about one inconsistency involving the surveillance system monitor job. *See supra* pp. 2-3. But, the Defendant is mistaken when he says that the expert had testified that there were no other inconsistencies. The expert did not say one way or the other. Instead, he volunteered that his quantification of surveillance system monitor jobs was based on a description that deviated from the one in the DOT. *See supra* pp. 2-3. This comment did not address the possibility of other conflicts with regard to the jobs as a stuffer or promotional button assembler.[3]

---

[3] The Defendant appears to interpret the Plaintiff's argument as one confined to the job as a surveillance system monitor. *See* Social Security Response Brief at p. 5 (Jan. 20, 2012) ("Plaintiff does not challenge the [vocational expert's] testimony or the [administrative law judge's] findings regarding the [jobs as a stuffer and promotional button assembler]."). Although the Plaintiff's opening brief is unclear in its scope, the Defendant's interpretation appears too restrictive. The Plaintiff began by arguing that the administrative law judge had not asked the vocational expert if any of his opinions were consistent with the DOT. John Nichol's Brief in Chief at p. 5 (Nov. 21, 2011). The Plaintiff's explanation for the argument centered largely on the vocational expert's reference to available work as a surveillance system monitor. *Id.* at p. 6. But the Plaintiff's argument was not confined to this job.

Still, the Court must decide whether the alleged error would have been harmless. This question should be answered in the affirmative.

The Tenth Circuit Court of Appeals has held in a published decision that an administrative law judge's failure to inquire about potential conflicts can be considered harmless. *Poppa v. Astrue*, 569 F.3d 1167, 1173-74 (10th Cir. 2009). In an unpublished decision, the court has gone further and held that a failure to inquire about inconsistencies is harmless when the plaintiff has not identified any arguable conflicts. *Martinez v. Astrue*, 316 Fed. Appx. 819, 825-26 (10th Cir. Mar. 19, 2009) (unpublished op.).

As noted above, the vocational expert volunteered that his testimony deviated in one respect from the DOT on the number of surveillance system monitor jobs. *See supra* pp. 2-3. For these jobs, the vocational expert's testimony would arguably have obviated the need to ask about potential conflicts with the DOT.

Even if further inquiry were technically required for the three jobs, the alleged error would have been harmless. The vocational expert did not identify the job codes for a surveillance system monitor job, stuffer, or promotional button assembler. But for each job, the DOT contains only a single entry. A surveillance system monitor is listed in the DOT as No. 379.367-010, a stuffer is designated as No. 731.685-014, and a button assembler is referred to as No. 713.684-034. *See* DOT 379.367-010, 731.685-014, 713.684-034 (4th rev. ed. 1991). The Plaintiff has not suggested any unexplored inconsistencies between the vocational expert's testimony and the DOT with regard to work as a surveillance system

monitor, stuffer, or promotional button assembler. In these circumstances, the alleged failure to probe potential conflicts would have been harmless. *See supra* p. 4.

## III.  PAIN ANALYSIS

In his applications and at the hearing, the Plaintiff complained about his pain. Record at pp. 33-34, 38, 116, 131, 135, 139. Some of these complaints could have conflicted with an assessment of sedentary work. But, the administrative law judge discounted the pain complaints and found that the Plaintiff could perform a wide range of sedentary work. *Id.* at p. 17. The Plaintiff alleges a failure to explain the pain assessment and discuss several evidentiary items. Both arguments should be rejected.

### A.  Explanation of the Pain Assessment

The administrative law judge had to assess the Plaintiff's subjective allegations and make findings about Mr. Nichols' credibility.[4] In doing so, the judge bore a duty to "give specific reasons for the weight given to the individual's statements."[5] These reasons were to be "articulated in the determination or decision" and "be sufficiently specific to make clear

---

[4] *See Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987); Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, Westlaw op. at 1-2 (July 2, 1996).

[5] Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, Westlaw op. at 4 (July 2, 1996).

to the individual and to any subsequent reviewers the weight" given "to the individual's statements and the reasons for that weight."[6]

As noted above, the administrative law judge concluded that the Plaintiff could perform sedentary jobs as long as he had an option to sit or stand every 30 minutes. *Id.*; *see supra* p. 5. Sedentary work generally involves an ability to sit at least about six hours and to walk or stand no more than about two hours every work-day.[7]

The Plaintiff's complaints largely involved pain in his feet. Record at pp. 33, 131, 137, 139, 141; *see supra* p. 5. According to Mr. Nichols, the pain would worsen when he stood for a substantial period of time. Record at p. 38. The administrative law judge appeared to accommodate this complaint when he limited Mr. Nichols to sedentary work,[8] where he would sit — rather than stand — for virtually the entire work-day.

Indeed, in his application, Mr. Nichols was asked if he had any limitations in sitting. *See id.* at p. 139. Mr. Nichols did not identify any such problems. *See id.* Instead, Mr. Nichols identified restrictions in his ability to squat, stand, walk, reach, kneel, and climb

---

[6]     Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, Westlaw op. at 4 (July 2, 1996).

[7]     *See* Social Security Ruling 96-9p, *Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work,* 1996 WL 374185, Westlaw op. at 3 (July 2, 1996).

[8]     *See supra* p. 5.

6

stairs. *Id.* The administrative law judge appeared to credit these complaints when he restricted Mr. Nichols to sedentary work.

According to the Plaintiff, the administrative law judge had failed to give any reasons to discount the pain complaints. This argument is belied by the decision itself, where the administrative law judge expressly found that the pain was adequately controlled by medication. *Id.* at p. 21.

That finding is supported by substantial evidence. For example, the judge reasoned that treating records from July to October 2008 reflected adequate control of the pain with medication. *Id.* During this time-period, a treating physician — Dr. Mel Robison — stated repeatedly that Mr. Nichols' pain was being adequately treated with medication. *See id.* at pp. 473, 476, 482.

The Plaintiff also questions the judge's reference to daily living activities. In his decision, the judge reasoned in part that the Plaintiff's complaints were inconsistent with the extent of his daily activities. *Id.* at p. 21. The Plaintiff argues that his activities were minimal and consistent with a finding of disability. This argument appears to miss the point of the judge's reference.

The issue for the administrative law judge was not whether the pain was disabling in itself. Instead, the judge had a duty to assess Mr. Nichols' residual functional capacity, and the alleged pain could have impacted that assessment.[9] In the context of the eventual finding,

---

[9]    *See* Social Security Ruling 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, Westlaw op. at 5 (July 2, 1996).

the issue was whether the pain could have prevented even sedentary work on a consistent basis.[10] On that issue, the Plaintiff claimed that he could not get out of bed for days at a time and had to repeatedly elevate his feet to relieve the pain. *Id.* at pp. 33-34, 127.

As noted above, the judge rejected that assessment based in part on the repeated references between July and October 2008 to adequate pain relief through medication. *See supra* p. 7. As the judge explained, the effectiveness of the medication could be evaluated through Mr. Nichols' day-to-day activity. Record at p. 21; *see supra* p. 7. Mr. Nichols acknowledged that he was able to care for his personal needs, to work part-time, and "drive[] some." Record at p. 21; *see id.* at pp. 135, 137. The judge could legitimately conclude that these activities were inconsistent with the Plaintiff's testimony that the pain had prevented any activity for days at a time and required frequent elevation of his feet.[11]

B.      Discussion of Specific Evidentiary Items

The Plaintiff also contends that the administrative law judge had failed to specifically discuss three items. Two pertain to observations by an administrative employee, D. Dick. Mr. Dick knew the Plaintiff's father and had seen Mr. Nichols sleeping when his father was

---

[10]     *See* Social Security Ruling 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, Westlaw op. at 2 (July 2, 1996) ("Ordinarily, [residual functional capacity] is the individual's *maximum* remaining ability to do sustained work activities . . . on a regular and continuing basis . . . ." (emphasis in original)).

[11]     *See supra* pp. 7-8; *see also Luttrell v. Astrue*, 453 Fed. Appx. 786, 795 (10th Cir. Dec. 23, 2011) (unpublished op.) (upholding the credibility findings in part because the plaintiff's daily activities (going to the store, cleaning, cooking, and gardening) were inconsistent with an allegation of disabling pain).

8

working. *Id.* at p. 111. In addition, Mr. Dick commented that in an interview, Mr. Nichols had continually groaned and had repeatedly said "ow" while he was trying to walk about ten feet. *Id*. at p. 114. The third evidentiary item involves observations by a consulting physician, who in September 2006 expressed "impressions" of chronic pain syndrome and severe peripheral neuropathy in both feet. *Id*. at p. 200.

The administrative law judge had an obligation to discuss these items only if they involved evidence that was uncontradicted or "significantly probative." *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). The three items were neither uncontradicted nor significant with respect to the administrative law judge's assessment of residual functional capacity.

The judge did not question the existence of pain. *See supra* p. 7. Instead, the judge expressed a belief that the pain was adequately controlled by medication, particularly if Mr. Nichols were to stay off of his feet for prolonged periods of time during the work-day. *See supra* pp. 6-7. Thus, Mr. Nichols' groaning, as he was walking, would not appear inconsistent with the judge's assessment of an ability to perform sedentary work.

The consulting physician's impressions are also consistent with the administrative law judge's assessment. For example, the judge acknowledged that the Plaintiff had bilateral neuropathy in both feet. Record at p. 21. However, the judge noted that the progress notes between July and October 2008 reflected adequate control of the pain through medication. *Id*.; *see supra* p. 7.

And, it is difficult to see how the Plaintiff's sleep during the work-day would bear on the intensity of his pain. *See supra* pp. 8-9.

In these circumstances, the Court should decline to disturb the written decision based on supposed inadequacies in the discussion of Mr. Dick's findings and the consulting examiner's "impressions."

IV.   CARPAL TUNNEL SYNDROME

A consulting physician stated an "impression" of carpal tunnel syndrome. Record at p. 200. From this diagnosis, the Plaintiff complains that the administrative law judge had disregarded the evidence and that it could have diminished the occupational base for sedentary work. This argument is unconvincing.

The Plaintiff was asked in his applications to identify any limitations in the use of his hands. *Id.* at p. 139. None were identified. *See id.*

As the Plaintiff insists, a consulting physician stated an "impression" of carpal tunnel syndrome. *See supra* p. 10. Even with this statement of an "impression," the doctor acknowledged that Mr. Nichols had good bilateral hand grip. Record at p. 200.

With that evidence, the Court must determine whether the administrative law judge's findings conflicted with the consulting physician's opinion.[12] No conflict exists, as the Plaintiff did not claim any manipulative limitations and the consulting physician

---

[12]   *See* Social Security Ruling 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, Westlaw op. at 7 (July 2, 1996) ("If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

acknowledged good grips in both hands. *See supra* p. 10. Without a conflict, the Court should find that error exists.

V.      FOOT AND LEG CONTROLS

The Plaintiff also complains that the administrative law judge had failed to account for the inability to utilize foot and leg controls. The Plaintiff's criticism is circular.

The administrative record does not contain a single statement regarding a perceived inability to use foot or leg controls. Nonetheless, Mr. Nichols seems to question his ability to use these devices because of his foot pain. As discussed above, the administrative law judge discounted these complaints in part because the pain was adequately controlled through medication. *See supra* pp. 7-9. The administrative law judge obviously had no need to restrict the use of foot or leg controls based on a level of pain that he believed was being adequately controlled with medication. Thus, the judge's explanation for his credibility findings would also account for the absence of a limitation on foot or leg controls. In these circumstances, the Court should reject the Plaintiff's challenge to the implicit assessment of an ability to use foot and leg controls.

VI.     DISREGARD FOR OPINIONS BY TREATING PHYSICIANS

The medical record contains hundreds of pages of radiology reports, laboratory results, clinical reports, and progress notes by treating physicians. Record at pp. 173-74, 176, 178-98, 209, 220-55, 257-98, 301-310, 313-14, 316-61, 363-418, 420-58, 460-63, 465-533. According to the Plaintiff, the administrative law judge had improperly failed to discuss any of the treating sources' opinions. The problem with this argument is that the Plaintiff has not

identified any medical opinions in the medical records that are even arguably inconsistent with the administrative law judge's findings. The Plaintiff's broad argument would require the Court to sift through hundreds of pages of medical records and guess which conclusions Mr. Nichols thinks would conflict with the administrative findings. This type of sweeping argument defies meaningful review and the Court should reject the contention.[13]

## VII.   RECOMMENDED RULING

The Court should affirm the decision of the Social Security Administration.

## VIII.   NOTICE OF THE RIGHT TO OBJECT

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C.A. § 636(b)(1) (2011 supp.). The deadline for objections is July 9, 2012. *See* Fed. R. Civ. P. 6(d), 72(b)(2). The failure to file timely objections would result in waiver of the right to appeal the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## IX.   STATUS OF THE REFERRAL

The referral is discharged.

---

[13]   *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate when a plaintiff claimed disregard for a treating physician's opinions without identification of the conclusions allegedly ignored).

Entered this 22nd day of June, 2012.

_Robert E. Bacharach_
Robert E. Bacharach
United States Magistrate Judge